## BARNEY VS. SEELEY and others.

EQUITY. (1) *The complaint as stated presents an action of equitable cognizance.*

GUARDIAN: CONVEYANCE. (2) *Guardian may accept delivery of conveyance to ward.* (3) *Presumption against loser of conveyance.*

REAL ESTATE: TRUSTS: LIMITATIONS. (4) *Funds received on sale of others' land impressed with character of trust.* (5) *Limitation by adverse possession not decided.*

1. The complaint alleges that a deed of a certain forty-acre tract of land was, in 1848, duly executed by defendants J. W. S. and his wife L. S., so as to vest the title to said land in M. and S., minor daughters of said defendants; that the deed was afterwards placed in the hands of J. W. S., to be recorded, and was by him and L. S. destroyed or secreted, for the purpose of defrauding the grantees; that said defendants, in 1852, conveyed the land (with other lands) to one W., who on the same day reconveyed it to said L. S., and the latter, in 1868, conveyed it to one B., a *bona fide* purchaser; and that out of the proceeds of such sale L. S. purchased certain other lands, which she still owns; and judgment is demanded that plaintiff (one of the two heirs of M.) was seized in fee of one-fourth of said forty-acre tract upon the death of said M., intestate; and that said defendants be charged with the value of such one-fourth interest, as it was when the land was conveyed to B., and that the amount be made a lien on the other lands so purchased and owned by L. S. *Held,* that the action is one of equitable cognizance.

2. The general guardian of an infant *held* to be authorized to accept delivery of a deed of conveyance to his ward.

3. J. W. S., in 1848, executed and delivered a deed of land to the guardian of M., which was never recorded, and cannot be found. He testifies that it conveyed *only five acres* of land; that the guardian (who is since dead) took the deed away with him, and that he (J. W. S.) has not seen it since; but the court is of opinion, upon the weight of evidence, that the deed was of the *whole forty-acre tract* above mentioned, and that, after delivery, it was returned to J. W. S. to be by him put upon record, and was by him lost or destroyed. J. W. S. having afterwards dealt with and sold as his own the land described in said deed, *quære* whether, in case of doubt as to the *quantity* of land so conveyed, the maxim "*In odium spoliatoris omnia præsumuntur*" would not be applied.

4. Defendants having sold the land and received the purchase money, which belonged to M. and S., or to their heirs, a court of equity might impress the fund in the defendants' hands with the character of a trust; and it would seem that it might be charged as an equitable lien upon other real estate which they had purchased with the proceeds of such sale.

5. Whether in such a case *adverse possession* by said defendants of said forty-acre tract, for the period limited by the statute, could be set up to prevent a judgment against them establishing title in the plaintiff, is not here decided, it not appearing that they *entered* under the conveyance from W. to L. S., nor that they claimed title to the land exclusive of any other right, but rather that, after such conveyance to and reconveyance by W., they frequently recognized the title of M. and S.

APPEAL from the Circuit Court for *Washington* County

Action to establish a trust, and to charge the same as a lien upon real estate of defendants. The plaintiff, *Madora A. Barney*, alleged by her complaint that she and one other sister were the only heirs of Martha Seeley, who died March 7, 1859, seized of one-half of the S. W. 1-4 of the N. E. 1-4 of sec. 1, T. 10, R. 19, Washington county, and that said Martha was a daughter of the defendants *John W. Seeley* and *Lavina*, his wife; that Martha in her lifetime owned an undivided half of said forty acres, under a deed from the defendants *Seeley* to said Martha and Sarah Ann their daughters, duly made, executed and delivered so as to entitle it to be recorded, and bearing date about the fall of 1848; that the deed, without being recorded, was afterwards put into the hands of the defendant *John W. Seeley*, for safe keeping for said Martha and Sarah Ann, Martha being eleven years old when the deed was so made; but that the defendants *Seeley* destroyed or secreted the deed to defraud the grantees, and that they used the lands and received the rents from the date of the deed until February 10, 1868, being of the annual value of $50; that on the 23d of February, 1852, the defendants *Seeley* conveyed the land, with other lands, to one Wright, who on the same day conveyed it to the defendant *Lavina Seeley*; that the latter, on the 10th of

February, 1868, conveyed it to the defendant *Bohn*, with other lands, for $6,000, *Bohn* being a *bona fide* purchaser, and his deed being recorded February 24, 1868; and that out of the purchase money, the defendant *Lavina* purchased, February 21, 1868, and still owns, the west one hundred acres of the S. E. 1-4 of sec. 13, T. 11, R. 19. The complaint prayed judgment that the plaintiff, on her mother's death, was seized in fee of one-fourth of said forty acres; that she be paid one-fourth its value, being $1,000, and interest thereon from February 10, 1868; also one-fourth of the rent of the land from 1848 to February 10, 1868, with annual interest thereon; and that a lien on the one hundred acres above described be adjudged, to enforce such payment. Answer, in denial, and also setting up the ten years limitation as a bar to the action.

Defendants' objection, on the trial below, to the admission of any evidence under the complaint, because it did not state a cause of action, was overruled. The evidence sufficiently appears in the opinion. The court found as facts, that the defendants *Seeley*, for the consideration of $60, in the fall of 1848, conveyed to Martha and Sarah Ann, the former being then eleven years old, the forty acres in question, delivering the deed to one Coleman, guardian of the girls, who was authorized to receive it; that Coleman left it with *John W. Seeley* to have him record it, and that he received it for that purpose and agreed to record it, but that it had been destroyed by him, with intent to defraud Martha and her heirs out of the land; that at the time of making the deed, *John W. Seeley* was in possession and occupancy of the land, under a prior conveyance to him, and continued in possession, without any agreement in reference thereto, after the termination of his estate therein, until February 10, 1868, when the land was conveyed by *Lavina Seeley* to *Joseph Bohn* for $6,000; that the conveyance mentioned in the complaint from *John W. Seeley* to Wright, and from Wright to *Lavina Seeley*, was *mala fide* as to the rights of Martha; that Martha died seized in fee simple of

an undivided half of the forty acres; that the whole forty was worth $2,000 when conveyed to *Bohn;* and that plaintiff was then the owner in fee of an undivided one-fourth thereof.

The court held that the statute of limitations had not run against plaintiff; that *Lavina Seeley,* by reason of the fraud in the conveyance to her through Wright, was estopped from claiming adverse possession under the deed; that upon the death of Martha plaintiff was her heir, and inherited an undivided one-fourth of the forty acres; that *Bohn* held a perfect title to the land, but the transfer to him was a fraud upon plaintiff, whereby *Lavina* became her trustee as to the purchase money, and that she held in trust for plaintiff $742.10 of such purchase money. Judgment accordingly; from which the defendants *Seeley* appealed.

*I. N. Frisby, Foster & Coe,* for appellants, contended that there was no sufficient delivery of the deed made by the defendants *Seeley* to their daughters Martha and Sarah Ann in 1848. To constitute a delivery, the deed must be accepted by the grantee, or by some person for him pursuant to a previous agreement, or by direction of the grantee, or by a subsequent consent by some person authorized to receive it. *Cooper v. Jackson,* 4 Wis., 537; *Hawkes v. Pike,* 105 Mass., 560 (7 Am. R., 554); *Carnes v. Platt,* 7 Ab. Pr. (N. S.), 42. It does not appear that the deed was given to Coleman for the use of the grantees, or that they ever knew of it. See on this point *Fisher v. Hall,* 41 N. Y., 416, 420. To make a delivery, the grantor must put the deed beyond his power to revoke or reclaim. 3 Washb. R. P., ch. IV, sec. 2; *Welch v. Sackett,* 12 Wis., 243. 2. The statute applicable to this case limits the time of bringing the action to ten years. The cause of action accrued in 1852. Plaintiff's ancestor was twenty-one in 1858, when the statute began to run, but the action was not brought until 1874. Defendants were in adverse possession. Adverse possession is a possession under the belief of title exclusive of anybody else. *Woodward v. Reynolds,* 1 Chand., 244–250.

Defendants believed the land was theirs. They cleared, fenced, paid taxes and treated it as their own. The conveyance to Wright, and the reconveyance to *Mrs. Seeley*, and the record thereof, were an open and public declaration that the land was theirs. Even if *Mrs. Seeley* had been a tenant, she ceased to be such as soon as she asserted title. Washb. R. P., Book 1 ch. XI, sec. 1, pl. 13. There is no tenancy when the tenant openly disowns title in the landlord, since by such assertion he disclaims the "holding of," which is the import of the term "tenant." Angell on Limitations, § 437. This action seeks to enforce a trust that was openly repudiated twenty-two years ago, and there is no pretense that the ancestor did not know it. See *Willison v. Watkins*, 3 Pet., 47; *Howell v. Howell*, 15 Wis.; 55. The law that the statute of limitations does not apply as between landlord and tenant, refers only to cases where such relation is conventional, not where it arises from mere operation of law. See *Sands v. Hughes*, 53 N. Y., 294; Angell on Lim., §§ 437, 438; Herman on Estoppel, §§ 302, 348. To call defendants trustees does not help plaintiff. When the trustee denies the trust, the statute begins to run. 7 Johns. Ch., 90. The trust, if any existed, was denied when *Seeley* deeded the land to Wright, and Wright to *Mrs. Seeley*, in 1852.

*Frisby & Weil*, for respondent, argued that the delivery of the deed in 1848 to Coleman, the guardian of the girls, was a sufficient delivery. *Seeley* assented thereto at the time by not dissenting, and by afterwards receiving it from Coleman and promising to put it on record. *Hawkins v. Pike*, 105 Mass., 560; *Fisher v. Hall*, 41 N. Y., 416, 421–423. 2. Defendants cannot be heard to object that the proof was not sufficiently definite as to the description and quantity of the land, they having despoiled us of our better evidence. Kerr on Fraud and Mistake, 275, 276; *Jackson v. McVey*, 18 Johns., 330. 3. There can be no pretense that *Seeley* entered into possession of the land under claim of title exclusive of any other right, founding such claim upon some written instrument, so as to bring

himself under the statute, sec. 6, ch. 138, R. S. *Seeley* occupied the land from the date of his deed to Martha and Sarah Ann in 1848, until *Bohn* took possession, February 10, 1868, as a tenant at sufferance. 1 Washb. R. P., ch. XII, sec. 1, pl. 2, 6; *Livingston v. Tanner,* 12 Barb., 481. The tenant cannot avail himself of his possession as being adverse to the owner, for the purpose of barring the owner's claim under the statute of limitations. 1 Washb. R. P., ch. XII, sec. 1, pl. 4; Angell on Lim., § 437; *Jackson v. Burton,* 1 Wend., 341. And the recognition by *Seeley* of superior title in the girls is conclusive against him on the statute of limitations. Tyler on Ejectment, etc., 883, 884. *Lavina Seeley* cannot claim the benefit of the statute by adverse possession, for she never entered into possession under her deed. She must show a *bona fide* entry, under color of title exclusive of any other right, relying upon her title, believing the land to be hers, and thenceforward maintaining an actual, visible, notorious and hostile possession. Clear proof of these facts must be made, and every presumption will be made in favor of the title of the true owner. *Sydnor v. Palmer*, 29 Wis., 251, 252. And her recognition of superior title in the girls is fatal to her claim. 4. When the defendant *Lavina* received of *Bohn* the proceeds of the value of that forty acres, she became a trustee of the plaintiff for the same, and the plaintiff can follow it into any new investment or form which it may take in her hands. The deed to *Bohn* in 1868, in connection with the record of the deeds of 1852, coupled with *Bohn's bona fide* purchase and possession, operated as a fraud upon the plaintiff's rights, by depriving her of her action of ejectment for the land; and a resulting trust was created, which can only be enforced in equity.

Cole, J. This action is doubtless one of equitable cognizance. Its object is to have the court adjudge that the plaintiff took the title in fee of one-fourth of the forty-acre tract mentioned in the complaint, on the death of her mother, and to

charge the defendants *John W. Seeley and wife*, as trustees, with the value of that interest as it was when the property was conveyed by them to *Bohn*, and make the amount an equitable lien on the other lands described. The original forty, with other real estate, was conveyed in 1868 to *Bohn*, who is admitted to be a *bona fide* purchaser, and no relief is sought against him.

Some objections were taken to the sufficiency of the complaint, which we shall dismiss with the remark that they are not deemed tenable. On the argument, the counsel for the defendants labored hard to establish the position that there was no sufficient delivery of the deed executed by *John W. Seeley and wife* to their infant daughters, Martha and Sarah Ann, in 1848. He stated truly that the doctrine is elementary, that delivery of a deed is essential to give effect to it as a conveyance. We think, however, that the learned counsel might have omitted his effort upon that point, in view of the evidence of *John W. Seeley*, who expressly testified to the execution and delivery of such a deed. True, he says the deed was for five acres only ; but that he executed and delivered a deed to Coleman, is as plainly stated as any fact can be. Coleman was the guardian of Martha and Sarah Ann, and of course was fully authorized to accept the delivery on behalf of his wards. The question of delivery, then, of some deed made by *John W. Seeley and wife* in 1848 to their daughters, is put at rest by the defendant's own testimony. And the serious controversy, on the evidence, is as to what tract or how many acres were conveyed by the deed. The deed itself cannot be produced, it having been lost or destroyed by some one, and never placed on record. Who is responsible for the loss or destruction of the instrument, is a question left in some obscurity, on the evidence. *Mr. Seeley* testifies that Augustus Coleman took the deed away with him in 1848, and that he has not seen it since. Coleman is dead, and the conveyance cannot be found among his papers. There is considerable testimony to the effect that

after the deed was executed and delivered by the *Seeleys* to Coleman, and upon Coleman's paying *Seeley* the money which he held, belonging to his wards, as the consideration therefor, Coleman then handed the deed back to *Seeley* for safe keeping, or to be placed upon record. The strong probabilities are, that this was the way the business was transacted, and that the deed went into the defendant's possession. Inferior evidence as to its contents is admissible, and the counsel for the plaintiff insists that the maxim, *in odium spoliatoris omnia præsumuntur*, may be applied. Perhaps this presumption might be made from the fact that the defendants have not produced the deed, nor accounted for its absence ; but without the aid of such a presumption we are inclined to hold upon the evidence that forty acres was the quantity of land conveyed. The land conveyed was unimproved, and was purchased by *Seeley*, a year or two before, for $2.50 per acre. According to his own statement, he was paid by Coleman, as purchase money, $40, while there is other testimony which tends strongly to show he was paid $60. It is charitable to assume that he did not drive a hard bargain with the guardian of his infant children, but that his paternal feelings led him to act liberally in the matter. Besides, there is corroborating testimony to support the opinion or impression of Mr. Wheeler, who drew the deed, that forty acres was the quantity conveyed. The court below found as a fact, that the southwest quarter of the northeast quarter of section one was conveyed for the consideration of $60 ; and it seems to us that the weight of testimony sustains that conclusion. The court likewise found that Coleman left the deed with the defendant *Seeley*, to be recorded, and that the latter agreed to place it on record, but has fraudulently destroyed it with intent to defraud Martha and her heirs out of the land. It is a little difficult to reconcile his conduct in this transaction with an innocent and honest purpose. If the deed was left with him to be placed upon record, as we are inclined to think it was, he should have had it recorded. We can only specu-

late as to his motive for suppressing or destroying the instrument. Perhaps his understanding was, as he states, that if he kept the children one or two years, the deed would be null and void. Possibly he has some claim or equity to be paid for supporting his children, not only during their minority, but after they became of age. He has not put in any claim for compensation on that ground, and there is nothing in the case to show that he would be entitled to it if he had. We have only alluded to the point as possibly affording some excuse or explanation of his conduct in respect to the deed, which otherwise seems to be dishonest. But we feel constrained to affirm the finding of the court below in respect to the deed, to this extent at least, that the evidence shows that a deed of that tract was made and delivered, and that it afterwards came into the possession of the defendant *John W. Seeley*, who has lost or destroyed it. These facts, we think, are established by the proofs in the case.

It appears that in February, 1852, the defendants *John W. Seeley and wife* conveyed the tract above named, with other lands, to one Wright, who immediately reconveyed them to the defendant *Mrs. Seeley*. These deeds were recorded soon after their execution, and seem to have been made for the purpose of vesting the title in *Mrs. Seeley*. In 1868 the lands were conveyed to the defendant *Bohn*, who, as before observed, is conceded to be a *bona fide* purchaser. But the money received by the defendants for the forty-acre tract belongs to Martha and Sarah Ann, or to their heirs. A court of equity would impress the fund in the defendants' hands with the character of a trust, and doubtless might charge it as an equitable lien upon the real estate of the defendants, as demanded in the complaint, unless the defense of the statute of limitations is a bar to the action. That point remains to be considered.

The defendants set up in their answer the defense of the ten years statute of limitation. And, as we understand the argument on this point, the counsel insists that the defendants have been in the exclusive adverse possession of the premises for

more than ten years, founding such possession on the deed made to *Mrs. Seeley* by Wright in 1852. Therefore, he claims, they are entitled to the protection afforded by sec. 6, ch. 138, R. S. That section enacts, in substance, that when it appears that an occupant, or those under whom he claims, entered into the possession of any premises under claim of title exclusive of any other right, founding such claim upon some written instrument as being a conveyance of the premises, and that there has been a continued occupation and possession of the premises included in such instrument, under such claim, for ten years, the premises shall be deemed to have been held adversely. The difficulty with this defense in the case at bar is, that there is no evidence that the defendants entered into the possession under claim of title exclusive of any other right, founding such claim upon the deed from Wright to *Mrs. Seeley.* The elements of a case to which this provision applies are wanting. The defendants do not seem to have entered into possession under the Wright conveyance, nor did they claim title exclusive of any other right. They had possession when they executed the conveyance to their daughters in 1848, and, so far as can be determined, continued that possession until they conveyed to *Bohn.* After 1852, they frequently stated in conversations that the forty-acre tract belonged to Martha and Sarah Ann, and at various times recognized the title of the girls. So that, whatever weight might otherwise be given to the execution and recording of the deeds from *Seeley and wife* to Wright, and from the latter to *Mrs. Seeley,* in 1852, as an assertion of adverse title, no importance can be attached to their acts in view of the repeated recognition of the rights of the girls after that time. The presumption is, that they continued to hold after 1852, as before, in subserviency to the true title. The correctness of this view, upon the established facts of the case, would seem to be too obvious to require further comment.

   *By the Court.* — The judgment of the circuit court is affirmed.

   RYAN, C. J., took no part in the decision of this cause.